04 SEP 27 PM 4:31

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

ENTERED

SEP 27 2004

| | |
|---|---|
| SANDRA LEE BRADFORD, et al., | ) |
| Plaintiffs, | ) |
| v. | ) CV-02-BE-2701-W |
| ALL AROUND TEMPS, INC., et. al., | ) |
| Defendants | ) |

MEMORANDUM OPINION

I. INTRODUCTION

This case is before the court on the defendants' motion for summary judgment (doc. # 63). In opposition to the motion for summary judgment, the plaintiffs filed initial and supplemental briefs and supporting evidentiary materials. On March 11, 2004, the court held a hearing on the defendants' motion for summary judgment. After the above-referenced hearing, the court took the motion for summary judgment under advisement.

The compliant filed by plaintiffs Sandra Bradford ("Bradford"), a Caucasian female, and Linda Gardner ("Gardner"), an African-American female, alleges violations of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et. seq.*, ("Title VII"), and 42 U.S.C. § 1981 against their former employer, All Around Temps d/b/a Darrell Walker Workforce Systems, a full service personnel staffing firm, and former branch manager Glenn Toney ("Toney"). Ms. Bradford also lodges state law invasion of privacy, assault and battery, and negligent training, supervision, and retention claims against the defendants. The court has jurisdiction over the federal claims pursuant to its federal question jurisdiction under 28 U.S.C. § 1331 and over the

80

state law claims pursuant to its supplemental jurisdiction under 28 U.S.C. § 1332.

According to Ms. Bradford, she was subjected to a sexually hostile work environment, retaliated against after she filed a charge of discrimination with the EEOC, subjected to racial discrimination, and constructively discharged, all in violation of Title VII. Bradford also contends that, during the two years that she worked under Toney's supervision, Toney required her to refer job applicants based on race and gender. Bradford argues that the application of this blatantly discriminatory practice emphasizing race and gender instead of qualifications limited "her ability to place job candidates and to earn bonuses and commissions" in violation of 42 U.S.C. § 1981.[1]

Ms. Gardner alleges that she was terminated in retaliation for the exercise of rights secured pursuant to 42 U.S.C. § 1981. According to Gardner, she was fired in retaliation for opposing Toney's racially discriminatory employment practices and subjected to intentional racial discrimination as a result of Toney's discriminatory employment practices emphasizing the race and gender of applicants instead of their qualifications.

Summary judgment is an integral part of the Federal Rules of Civil Procedure and allows a trial court to decide cases when no genuine issues of material fact are presented and when the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The parties' disagreement on each and every fact is not significant; the law requires only that "there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). *See also Celotex v. Catrett*, 477 U.S. 317, 327 (1986). A factual dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

---

[1] *See* Pl's Br., p. 17.

2

*Anderson*, 477 U.S. at 251-52. Mere speculation is insufficient to create an issue of fact and to defeat a properly-supported motion for summary judgment. *See Ramsey v. Leath*, 706 F.2d 1166, 1169-70 (11th Cir. 1983).

For the reasons summarized below, the court concludes that the defendants' motion for summary judgment is due to be GRANTED on both plaintiffs' federal claims. Furthermore, the court declines to exercise supplemental jurisdiction over Bradford's state law claims. Accordingly, this case is DISMISSED as a matter of law pursuant to Fed. R. Civ. P. 56.

## II. BRADFORD'S ALLEGATIONS OF DISCRIMINATORY CONDUCT[2]

In their motion for summary judgment, the defendants urge the court to dismiss Bradford's (1) Title VII hostile work environment, retaliation, and constructive discharge claims and (2) her claims for intentional discrimination pursuant to 42 U.S.C. § 1981. Given the reasons more explicitly outlined below, the court concludes that the defendants' motion for summary judgment is due to be GRANTED on all of Bradford's federal claims.

### A. Title VII Claims

**1. Sexually Hostile Work Environment Claim**

Bradford began working for Darrell Walker Workforce Systems in its Tuscaloosa branch office in August 1998. Defendant Glenn Toney was her immediate supervisor from 1998 until June 5, 2000. Bradford's sexually hostile work environment claim is essentially based on Toney's allegedly inappropriate behavior that consisted of allowing pornographic images to infect the workplace computer used by all Darrell Walker Workforce Systems employees, and

---

[2]Based on the lengthy and thorough presentation of the facts in the parties' briefs and at oral argument, the court does not include a complete recitation of the facts in this Memorandum Opinion.

3

founder Darrell Walker's allegedly inappropriate comments and physical contact.

As a preliminary matter, the court rejects the defendants' argument that Title VII's 180-day statute of limitations precludes the court from considering some of the discrete incidents comprising Bradford's sexually hostile work environment claim.[3] According to the defendants, Bradford's November 11, 2001 EEOC charge alleged various incidents of sexual harassment, some of which occurred as early as 1998.

Before filing suit in district court, a Title VII plaintiff must file a timely charge of discrimination with the Equal Employment Opportunity Commission. *Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1332 (11th Cir. 2000). Thus, pursuant to the 180-day rule, the protection of Title VII generally applies to claims of employment discrimination arising within 180 days prior to the filing of an EEOC charge. 42 U.S.C. § 2000e-5(e)(1). *See also, Morrow v. Auburn Univ. at Montgomery, Al.*, 973 F. Supp. 1392, 1400 (M.D. Ala. 1997) (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982)). Any claims occurring prior to this 180-day benchmark are untimely. *See* 42 U.S.C. § 2000e-5(e)(1).

However, in *National Railroad Passenger Corp. v. Morgan,* 536 U.S. 101 (2002), the Supreme Court held that a hostile work environment claim should be reviewed in its entirety, so long as *one* of the events comprising it fell within the statute of limitations. In making this ruling, the Court essentially rejected the "continuing violation doctrine" and simplified the law by allowing courts to view allegations of hostile work environment as "a single unlawful

---

[3]Defendants specifically ask the court to find that the following incidents are time-barred: (1) discovery of the "Free Sex Live" icon in May 2000; (2) discovery in November 2000 of the picture of a woman defecating; (3) Mr. Walker's comments made in 1999 relating to sexual harassment at Johnson Controls; (4) alleged inappropriate touching/kissing by Mr. Walker in 1998; and (5) any adverse employment action that occurred after Bradford allegedly reported Walker's conduct in 1998.

4

employment practice." *Id.* at 2075. Therefore, if the smallest portion of that "practice" occurred within the limitations time period, then the court must consider all of the alleged acts, regardless of whether each one occurred within the 180-day limitations period.

Because Bradford has presented evidence that Darrell Walker made inappropriate sexual jokes in October or November 2001, a period of time within 180 days of the filing of her November 2001 EEOC complaint, the court concludes that at least one incident of harassment falls within the limitations period. Consequently, the court must consider all of the discrete instances of harassment comprising Bradford's sexually hostile work environment claim.

The court next addresses the more analytically complex issue of whether Bradford can establish a prima facie case of a sexually hostile work environment. An employer may be liable under Title VII for subjecting an employee to a sexually hostile work environment. *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 65-66 (1986). To be actionable, the workplace environment must be both objectively offensive – one that a reasonable person would find hostile or abusive – and subjectively offensive – one that the plaintiff in fact did perceive to be so. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).

The Eleventh Circuit has adopted a five-pronged test for analyzing sexual harassment claims. Specifically, the plaintiff must demonstrate: (1) she is a member of a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her sex; (4) the harassment was so severe or pervasive so as to alter the conditions of her environment and create a hostile or abusive working environment; and (5) a basis exists for employer liability. *See Gupta v. Florida Bd. of Regents,* 212 F.3d 571, 583 (11th Cir. 2000); *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999); *Merriweather v. Alabama Dep't of Pub. Safety*, 17 F.

5

Supp. 2d 1260, 1271 (M.D. Ala. 1998).

The defendants concede that Bradford is a member of a protected class. However, the parties vehemently disagree about the plaintiff's ability to establish the remaining elements of her claims. Because the court concludes that Bradford has not presented sufficient evidence to create a genuine issue of material fact that the alleged harassment was sufficiently severe or pervasive to alter the terms and conditions of her employment, the defendants' motion for summary judgment is due to be granted on Bradford's sexually hostile work environment claim.[4]

Plaintiff has not produced sufficient evidence to create a genuine issue of material fact that the alleged harassment was objectively severe or pervasive. *See Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1276 (11th Cir. 2002). The "severe" or "pervasive" prong of the analytical paradigm "is not, and by its nature cannot be, a mathematically precise test." *Harris*, 510 U.S. at 22. However, courts within this circuit typically examine (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating; and (4) whether the conduct unreasonably interferes with the employee's job performance. *See Allen v. Tyson Foods Inc.*, 121 F.3d 642, 647 (11th Cir. 1997). The third prong of the analytical test ensures "that courts and juries do not mistake ordinary socializing in the workplace . . . for discriminatory 'conditions of employment'" and ensures that the courts are not creating a "general civility code." *Gupta*, 212 F.3d at 583. Consequently, perhaps this prong is the one "that tests the mettle of most . . . harassment claims." *Id.*

---

[4] Having concluded that Bradford's evidence does not create a genuine issue of material fact on the third prong, the court does not address the other elements of the analytical paradigm for establishing a prima facie sexually hostile work environment claim. The does note, however, that significant questions remain regarding the plaintiff's ability to establish at least some of the other prongs of the analytical paradigm.

6

The Supreme Court has stated that "[t]he real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed." *Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75, 82-83 (1998). "Common sense, and an appropriate sensitivity to social context, will enable courts and juries to distinguish . . . conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive." *Id.* at 83. Therefore, the existence of sexual harassment must be determined "in light of 'the record as a whole' and 'the totality of circumstances, such as the nature of the sexual advances and the context in which the alleged incidents occurred.' " *Meritor Savings Bank,* 477 U.S. at 68 (quoting 29 C.F.R. § 1604.11(b)). "[T]he objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances and requires careful consideration of the social context in which particular behavior occurs and is experienced by its target." *Oncale,* 118 S.Ct. at 1003 (internal punctuation omitted).

A careful examination of the record reveals that none of Bradford's allegations, when considered in the light most favorable to her and within the totality of the circumstances, are sufficiently severe or pervasive to create a hostile or abusive working environment from the perspective of a reasonable person in the plaintiff's position. For example, the record does not substantiate the assertions contained in Bradford's brief that she was subjected to a constant barrage of pornographic computer images and sexually offensive e-mails because of Toney's unauthorized use of the company's computer and e-mail system. Instead, the undisputed facts indicate that what Bradford categorizes as a "barrage" consists of only three separate occasions in

7

May and November 2000 when she viewed the following images: (1) the "Free Sex Live" icon, that did not in itself contain any pornographic images; (2) one-time incident when Bradford vaguely glimpsed Toney sitting at a computer looking at pornographic images; and (3) the one picture of the nude woman defecating contained in the resume file.[5]

Consequently, the major factors undermining Bradford's claim regarding the severity and pervasiveness of the alleged harassment is the infrequency of her exposure to the allegedly pornographic material.[6] Lastly, nothing in the record indicates that Toney's passive conduct in inadvertently allowing the pornography to be placed on a common workplace hard-drive was objectively or subjectively physically threatening, or conduct that unreasonably interfered with Bradford's job performance. Although Bradford undoubtedly found these images offensive, their existence on a common company database does not meet the threshold level of severity or pervasiveness to allege a prima facie hostile work environment claim. At best, Bradford's allegations against Toney amount to what can only be described as unprofessionalism, not sexually harassing behavior directed toward her.

The above-referenced analysis is equally applicable to the allegations of sexually inappropriate comments and conduct attributed to Darrell Walker. Darrell Walker is not an All Around Temps employee and has no ownership interest in the company.[7] During the time period

---

[5] *See* Bradford Dep., part 1, p. 135-36; part 2, p. 27, 29.

[6] In reaching the above-referenced conclusion, the court does not consider the additional pornographic images discovered by Bradford in December 2001 pursuant to an authorized investigation of Toney's improper use of company computers because these images were not directed towards Bradford or any other woman, but were sought out by Bradford pursuant to an authorized investigation of Toney's misuse of corporate property.

[7] *See* Channell Dep., p. 24-28.

8

germane to this lawsuit, he primarily gave motivational speeches at the company's annual meetings.[8] By Bradford's admission, the alleged inappropriate touching by Darrell Walker occurred approximately ten times over a four-year period and only at company meetings.[9] Consequently, the undisputed evidence of the record clearly establishes that Bradford did not have day-to-day contact or even frequent contact with Darrell Walker. Simply put, no evidence suggests that Darrell Walker regularly or repeatedly subjected plaintiff to the type of conduct that a reasonable jury could interpret as severe or pervasive. *See Gupta*, 212 F.3d at 584-85.

Finally, the court is not persuaded that Toney's gender-based placement of female applicants created a sexually hostile work environment. According to plaintiff, Toney's discriminatory practice of limiting the placement of female job applicants created an environment that was hostile to female employees. Although the court envisions a situation where gender-biased employment practices *could* create an atmosphere of hostility sufficient to sustain a claim for a sexually hostile work environment, Bradford has not provided the court with *any evidence* corroborating her conclusory allegations that the atmosphere created by Toney's discriminatory employment practices was objectively severe and pervasive enough to alter the terms and conditions of her employment. In objecting to a motion for summary judgment, the plaintiff, not the court, has the burden of producing evidence that creates a genuine issue of material fact. *See Ramsey*, 706 F.2d at 1169-70 (noting that mere speculation is insufficient to create an issue of fact and defeat a properly-supported motion for summary judgment).

Because Bradford has not produced sufficient evidence to create a genuine issue of

---

[8] *See* Channell Dep., p. 24-28.

[9] *See* Bradford Dep., part 1, p. 155.

material fact that the instances of alleged harassment were sufficiently severe or pervasive to alter the terms and conditions of her employment, the defendants' motion for summary judgment is due to be GRANTED on Bradford's sexually hostile work environment claim.

### 2. Constructive Discharge Claim

In support of her constructive discharge claim, Bradford merely alleges that "[plaintiff] has described several harassing conditions in relation to her hostile work environment claim. These same conditions support her constructive discharge claims." A constructive discharge occurs when an employer imposes working conditions that are "so intolerable that a reasonable person in [the employee's] position would have been compelled to resign." *Poole v. Country Club of Columbus, Inc.,* 129 F.3d 551, 553 (11th Cir. 1997) (quotation marks and citation omitted). A plaintiff must do more than merely show that she was subjected to actionable harassment to succeed on a constructive discharge claim. Indeed, "[t]he standard for proving constructive discharge is *higher than* the standard for proving a hostile work environment." *Walton v. Johnson & Johnson Servs., Inc.* 347 F.3d 1272, 1282 (11th Cir. 2003) (emphasis added); *Hipp v. Liberty Nat'l Life Ins. Co.,* 252 F.3d 1208, 1231 (11th Cir. 2001). Bradford's failure to establish a sexually hostile work environment likewise condemns her constructive discharge claim.

Bradford's brief is extremely vague regarding the precise nature of her constructive discharge claim. However, given the conclusion regarding Bradford's hostile work environment claim, the court finds that Bradford has not alleged sufficient facts to create a genuine issue of material fact about whether (1) any actionable sexual harassment occurred and/or (2) her working conditions were so intolerable that a reasonable person in her position would be compelled to

10

resign. Consequently, the court concludes that the defendants' motion for summary judgment is due to be GRANTED on Bradford's constructive discharge claim.

### 3. Retaliation Claim

In her amended complaint, Bradford alleges that she was retaliated against by the defendants after she filed an EEOC charge of discrimination in November 2001. Title VII prohibits employers from discriminating against an employee who has either opposed an employment practice made unlawful under Title VII or made a charge, or participated in any manner in an investigation, proceeding, or hearing under Title VII. 42 U.S.C. § 2000e-3(a). Because the record contains no direct evidence of retaliation, Bradford must demonstrate a presumption of intentional discrimination under the *McDonnell-Douglas* paradigm. *See McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973).

"In order to establish a prima facie case under the *McDonnell-Douglas* paradigm, a plaintiff must prove the following elements: (1) she participated in an activity protected by Title VII; (2) she suffered an adverse employment action; and (3) there is a causal connection between the participation in the protected activity and the adverse employment decision." *Gupta*, 212 F.3d at 587. Neither party disputes that Bradford participated in an activity protected by Title VII: Bradford filed a charge with the EEOC on November 11, 2001 complaining of sexual harassment. However, the parties vehemently dispute whether plaintiff can establish the existence of the second and third prongs of the above-referenced analytical paradigm.

The court concludes, as a matter of law, that Bradford cannot establish the existence of an adverse employment action in response to her protected activity. "An adverse employment action is an ultimate employment decision, such as discharge or failure to hire, or other conduct

11

that 'alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee.'" *Gupta*, 212 F.3d at 587 (citing *Robinson v. City of Pittsburg*, 120 F.3d 1286, 1300 (3rd Cir. 1997)). "Conduct that falls short of an ultimate employment decision must meet 'some threshold level of substantiality . . . to be cognizable under the anti-retaliation clause.'"*Gupta*, 212 F.3d at 587 (quoting *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1456 (11th Cir. 1998)). In evaluating what actions meet that required level of substantiality, courts recognize that "'Title VII[] is neither a 'general civility code' nor a statute making actionable the ordinary tribulations of the workplace." *See Gupta*, 212 F.3d at 587 (quoting *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1178 (10th Cir. 1999)). Whether an action is sufficient to constitute an adverse employment action must be determined on a case-by-case basis. *Doe v. Dekalb County Sch. Dist.*, 145 F.3d 1441, 1448-49 (11th Cir. 1998).

According to Bradford, she was retaliated against in the following ways after she filed an EEOC charge of discrimination in November 2001: (1) denied access to company information; (2) threatened with lawsuits; (3) accused of theft; (4) refused reimbursement for travel expenses; (5) denied access and direction regarding the proper way to increase sales and denied a meeting with the President of the Company; (6) denied the resources needed to accomplish her job; (7) subjected to the taping of her telephone conversations; and (8) denied assistance with developing her client base.

The court concludes that the eight instances of alleged retaliation are not "'objectively serious and tangible enough' to alter [the plaintiff's] compensation, terms, conditions, or privileges of employment, deprive . . . her of employment opportunities or adversely affects . . .

12

her status as an employee.'" *Gupta*, 212 F.3d at 588 (quoting *Robinson*, 120 F.3d at 1300). Except for her conclusory allegations, Bradford does not provide the court with any corroboration that the denial of access to company resource information, threats of impending lawsuits, and other retaliatory incidents were objectively serious enough to cause a demonstrative adverse impact on the terms and conditions of her employment.[10] *See e.g., Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001) *(citing Merriweather v. Alabama Dept. of Pub. Safety,* 17 F.Supp. 2d 1260, 1274 (M.D. Ala. 1998)) for its holding that a "term or condition of employment may be said to have been affected if there is a 'demonstrable adverse impact ...' "). As indicated in a earlier portion of this opinion, in objecting to a motion for summary judgment, the plaintiff, not the court has the burden of producing evidence that creates a genuine issue of material fact. *See Ramsey*, 706 F.2d at 1169-70. An employee's subjective view of the significance and adversity of the employer's action is not controlling. *See Davis*, 245 F.3d at 1240. Simply put, "ordinary tribulations of the work place" are not substantial evidence of an adverse employment action in retaliation for filing an EEOC charge of discrimination. Consequently, Bradford's conclusory allegations regarding the severity of the alleged retaliation is not determinative and does not create a genuine issue of material fact sufficient to defeat a motion for summary judgment. Accordingly, the defendants' motion for summary judgment is due to be GRANTED on Bradford's retaliation claim.

---

[10] *See* doc. # 68, p. 18-20.

### B. 42 U.S.C. § 1981 Claims[11]

Even with the benefit of supplemental briefing and oral argument, the court has only a tenuous grasp on the nature of Bradford's section 1981 claims. Bradford's claims under section 1981 stem from her forced participation in Toney's discriminatory placement practices and the resulting adverse financial consequences that Bradford allegedly experienced because of the above-referenced discriminatory employment practices. Given the reasons outlined below, the court concludes that the defendants' motion for summary judgment is due to be GRANTED on the plaintiff's section 1981 claims.

Section 1981 "prohibits intentional race discrimination in the making and enforcement of public and private contracts, including employment contracts." *Ferrill v. The Parker Group, Inc.*, 168 F.3d 468, 472 (11th Cir. 1999). The statute provides in pertinent part:

> [a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981. To successfully allege a cause of action under § 1981, a plaintiff must present evidence of intentional racial discrimination. *Ferrill*, 168 F.3d at 472. Discriminatory intent can be established through either direct or circumstantial evidence. *See Hendricks v. Baptist Health*

---

[11] Bradford brings her race-based discrimination claims under 42 U.S.C. § 1981 because of her inability to fulfill the administrative prerequisites for the filing of a Title VII race discrimination claim. Although Bradford filed an EEOC charge on November 11, 2001, her allegations in the November 2001 charge only related to sex discrimination and did not contain any allegations relating to race. Similarly, Bradford's amended EEOC charge filed in March 2002 did not contain an allegations relating to racial discrimination and instead, outlined the parameters of her retaliation claim. Therefore, the court analyzes Bradford's section 1981 claims independently of her Title VII claims.

*Servs.*, 278 F. Supp. 2d 1276. 1286 (M.D. Ala. 2003) (citing *United States Postal Serv. Bd. of Gov. v. Aikens,* 460 U.S. 711, 714 n. 3, (1983)). The elements typically required to state a claim under section 1981 are (1) that plaintiff is a member of a racial minority; (2) that defendant intentionally discriminated against plaintiff on the basis of plaintiff's race; and (3) that the discrimination interfered with one of the rights secured by section 1981. *Johnson v. Ry. Express Co.*, 421 U.S. 454, 450 (1975).

Absence of the first element, that plaintiff is a member of a racial minority, does not, however, preclude recovery under section 1981. *See McDonald v. Santa Fe Trail Transp. Co.,* 427 U.S. 273, 287-96 (1976) (holding that Section 1981 "explicitly applies to *'All persons'* (emphasis added [by Supreme Court] ), including white persons" and discussing legislative history that reveals the statute was not intended to be limited in scope to discrimination against nonwhites). Consequently, courts clearly hold that a Caucasian like Ms. Bradford has standing to bring a § 1981 clam based on differential treatment based on her race. *See Bass v. Board of County Comm'rs*, 256 F.3d 1095, 1103 (11th Cir. 2001).

Non-minority plaintiffs like Ms. Bradford may also maintain a cause of action under section 1981 based on retaliation experienced because of their refusal to engage in purposeful racial discrimination, *see Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229, 237 (1969) (white landowner had standing to bring lawsuit protesting his expulsion from corporation organized to operate a community park and playground because he attempted to lease property to an African-American family), or based on their objection to an employer or a putative employer's purposeful racial discrimination. *Parr v. Woodmen of the World Life Ins. Co.,* 791 F.2d 888, 890 (11th Cir.1986) (white male alleging he was not hired because his wife was black); *Alizadeh v.*

15

*Safeway Stores, Inc.,* 802 F.2d 111, 114 (5th Cir.1986) (allowing Section 1981 suit by white female alleging she was discharged because her husband was Iranian); *Winston v. Lear-Siegler, Inc.,* 558 F.2d 1266 (6th Cir. 1977) (white plaintiff stated a § 1981 claim where he alleged he was discharged because of his protest against racially discriminatory discharge of a black coworker); *DeMatteis v. Eastman Kodak,* 511 F.2d 306, 312 (2nd Cir. 1975) (white person alleging he was forced into premature retirement by his employer because he had sold his house, which was located in a predominately white neighborhood, to a black person). These cases turn on the existence of an adverse employment action taken against a non-white plaintiff based on an employer's racial animus against African-Americans and other minorities. *See e.g., Parr*, 791 F.2d at 890 (white male not hired because of racial animus against African-Americans); *Alizadeh*, 802 F.2d at 114 (white male terminated because of racial animus against Iranians).

Bradford's section 1981 claim is not based on any intentional discrimination that she herself experienced because she is Caucasian. Instead, plaintiff argues that she has a valid race-based discrimination claim under section 1981 because of the *indirect financial injury*, in the form of decreased wages and commissions, that she allegedly experienced because of her opposition to Toney's racially discriminatory employment practices. According to Ms. Bradford, Toney, who was at one point her immediate supervisor, told her that she could not assign temporary clerical positions at certain companies to African-Americans.[12] Although it is undisputed that Bradford received a base salary in addition to a commissions based on office productivity,[13] plaintiff has not provided the court with *any evidence* establishing that she

---

[12]Bradford dep., part 1, p. 55-62.

[13]Bradford dep., part 1, p. 76.

16

experienced an adverse employment action in the form of decreased commissions and bonuses as a direct result of Toney's discriminatory practices. Without evidence of an adverse employment action, the court concludes that Bradford has not created a genuine issue of material fact to preclude summary judgment on her section 1981 claim. Although a decrease in bonuses and commissions *could* certainly constitute an adverse employment action, Bradford has not provided the court with *any* evidence substantiating her conclusory allegations that she experienced a decrease in commissions and bonuses as a direct result of Toney's racially discriminatory practices. As stated in another portion of this opinion, the plaintiff, not the court has the burden of producing evidence that creates a genuine issue of material fact; mere speculation is insufficient to create an issue of fact to defeat a motion for summary judgment. *See Ramsey*, 706 F.2d at 1169-70. The plaintiff has not created a genuine issue of material fact on the existence of an adverse employment action. Accordingly, the court concludes that the defendants' motion for summary judgment is due to be GRANTED on Bradford's 42 U.S.C. § 1981 claim.

### III. Gardner's Allegations of Discriminatory Conduct under 42 U.S.C. § 1981

Like Bradford, Gardner's race-based discrimination claim arises from Toney's discriminatory employment practices and resulting adverse financial consequences that she personally experienced because of the above-referenced employment practices. Gardner began working at the company's Tuscaloosa branch in August 2000 and was a clerical employee who was paid hourly. Within three months of her employment, plaintiff alleges that Toney told her not to send African-Americans applicants to certain jobs. According to Gardner, she complained directly to Toney and various higher-level managerial officials about Toney's racially discriminatory practices. According to Gardner, she was fired in retaliation for opposing Toney's

racially discriminatory employment practices prohibiting the placement of minority job applicants at particular work sites.

To prove a prima facie case of retaliation, Gardner must show: "(1) that [she] engaged in a 'statutorily protected activity;' (2) that there was a 'subsequent adverse employment action;' and (3) that 'some causal relation exists' between the protected expression and the adverse action." *Hendricks*, 278 F. Supp. 2d at 1286 (M.D. Ala. 2003). Once plaintiff has established a prima facie case, a presumption of retaliation is created. *Id*. The burden then shifts to the defendant to rebut the presumption "by articulating legitimate, non-retaliatory reasons for its adverse action." *Id*. Once the defendant has satisfied his or her burden, "'the plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima-facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the [defendant] were not the real reasons for the adverse employment decision.'" *Id*. (quoting *Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000)).

The basis of Gardner's retaliation claim is the that she was terminated in February 2003 in retaliation for complaining about Toney's racially discriminatory employment practices in December 2001. Plaintiff has not produced any evidence of a causal connection between her complaints about Toney's allegedly discriminatory policies in December 2001 and her termination approximately two years later in February 2003. The "causal link" element requires that the plaintiff establish that the protected activity and the adverse employment action are not wholly unrelated. *Simmons v. Camden Cty. Bd. of Educ.*, 757 F.2d 1187, 1189 (11th Cir. 1985). The requisite causal connection can be inferred from "close temporal proximity." *See Gupta*, 212 F.3d at 590. The two year interval, however, precludes the inference created by close

temporal proximity in this case. Even assuming that the requisite decision-maker was aware of Gardner's complaints about Toney's allegedly discriminatory employment practices, plaintiff has presented no evidence, aside from her conclusory allegations, to create a genuine issue of material fact that the complaints lodged approximately two years prior to her termination were in any way related to her February 2003 termination. Accordingly, the court concludes that the defendants' motion for summary judgment on Gardner's section 1981 retaliation claim is due to be GRANTED because of Gardner's inability to establish a prima facie case of retaliation.

Based on the foregoing analysis, the court concludes that the defendants' motion for summary judgment (doc. # 63) is GRANTED as to all of the plaintiffs' federal claims. Because the court declines to exercise supplemental jurisdiction over the state law claims, Bradford's state law claims are DISMISSED without prejudice.

A separate final order will be entered.

DONE and ORDERED this 27th day of September, 2004.

KARON O. BOWDRE
UNITED STATES DISTRICT JUDGE